UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Brown | Civil Action No. 16-00310 |
| versus | Magistrate Judge Carol B. Whitehurst |
| Wal-Mart Stores Inc | By Consent of the Parties |

**MEMORANDUM RULING**

Before the Court is a Motion For Summary Judgment filed by defendant, Wal-Mart Louisiana LLC ("Wal-Mart"), [Rec. Doc. 23], Plaintiff, Derek Wilson Brown's, Memorandum In Opposition [Rec. Doc. 28] and Wal-Mart's Reply thereto [Rec. Doc. 32]. For the reasons that follow, the Court will grant the Motion.

*I. Background*

On April 16, 2015 at approximately 3:14 p.m., Plaintiff was allegedly injured after slipping and falling on a textured metal drain cover outside the Wal-Mart Store located in Lafayette, Louisiana. The weather on that date was rainy such that the sidewalk and the textured metal drain cover were saturated with rain water, and Plaintiff was using an umbrella.[1] *R. 23-4, Brown Depo.,p. 67, l. 5; p. 94, l. 3-5*; *R. 23-5, Video Surveillance*; *R. 23-6 Screenshot*.

---

[1] The Court notes that the Wal-Mart surveillance video shows customers exiting their cars and exiting the store with and without umbrellas. *R. 23-5, Video Surveillance*.

After parking his car in the Wal-Mart parking lot, Plaintiff walked down the sidewalk toward the right front entrance of the store. *R. 23-4, p. 67, l. 13*. Overlaying the sidewalk, perpendicular thereto, was a metal drain cover, covering a gutter which ran from the roof of the store, through the sidewalk, to the parking lot. *Id at p. 68, l. 15-20*. Plaintiff stated that as he was walking on the sidewalk he was mostly looking forward towards the doorway of the store, *Id at p. 79, l. 22-23*, but saw the drain cover out of the corner of his eye. *Id at p. 79, l. 12-13*. When he saw the cover, he did not think it was a problem and he saw no obstructions. *Id, at p. 70, l. 11-16*. Upon stepping on the drain cover, Plaintiff stated his foot slipped, thereby causing him to fall onto the sidewalk. *Id at p. 69, l. 7, 9-11*.

Thereafter, on the same date, Plaintiff took a cell phone video of the drain cover and the location of the accident and took photographs the following day. *R. 23-7 (in globo), 04/16/2015 Cell Phone Video and 04/17/2015 Photographs*. Plaintiff stated that upon inspecting the drain cover he noted there was "a very subtle height difference" between the edge of the drain cover and the top of the sidewalk. *Id at p. 80, l. 10–19*. He guessed that the difference was about a quarter inch up to less than a half an inch. *Id at pp. 80, l. 20–p. 81, l. 19*. Plaintiff also stated that upon stepping on the drain cover, he felt like the drain was "sloped." When he observed the drain cover after the accident, he stated that it looked "kind of warped," *Id at pp. 76, 1.*

*19–77, l. 7*, "like the sidewalk on one end ... sank a little, and caused the metal to go down with it," *Id at p. 94, l. 10–18.* Finally, Plaintiff stated that, based on his observation, the grating "seemed to be worn down." *Id at p. 70, l. 22–23.*

Plaintiff filed this action in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana on November 2, 2015. On March 7, 2016, Wal-Mart removed the case to this Court. *R. 1*. Wal-Mart filed the instant motion for summary judgment moving to dismiss Plaintiff's claims against it. Wal-Mart contends that Plaintiff cannot prove the drain cover presented an unreasonable risk of harm to Wal-Mart customers or that such was reasonably foreseeable as required under Louisiana's slip-and-fall statute, La. R.S. 9:2800.6.

## *II. Summary Judgment Standard*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio.*, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id*. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of her case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir.1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id*. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir.1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

### *III. Analysis*

"In Louisiana, 'every act ... of man that causes damage to another obliges him by whose fault it happened to repair it.' La. Civ. Code art. 2315(A). Under Louisiana's 'standard negligence analysis'—the 'duty-risk analysis'—a plaintiff must prove five elements: first, that the defendant had a duty to conform his conduct to a

specific standard (duty); second, that the defendant's conduct failed to conform to the appropriate standard (breach); third, that the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause in fact); fourth, that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (legal cause); and fifth, that the plaintiff suffered actual damages (damages).

For 'merchants' like Wal-Mart, however, § 9:2800.6 of the Louisiana Revised Statutes alters this analysis slightly. Merchants 'owe [ ] a duty ... to exercise reasonable care to keep [their] aisles, passageways, and floors in a reasonably safe condition,' which 'includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.' La. Stat. § 9:2800.6(A). When someone sues a merchant for damages 'as a result of an injury ... or loss sustained because of a fall due to a condition existing in or on [the] premise,' the plaintiff must prove 'in addition to all other elements of [the] cause of action':

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La.Rev.Stat. § 9:2800.6(B)." *Duncan v. Wal-Mart Louisiana , L.L.C.*, —F.3d.—, 2017 WL 2991234 (5th Cir. July 14, 2017).

The parties agree that this case is exclusively governed by the Louisiana Merchant Liability Statute, La.Rev.Stat. § 9:2800.6. In order to recover damages for injuries sustained in a slip or trip and fall accident, the plaintiff has the burden of proving all three of the requirements of La. R.S. 9:2800.6(B), and the failure to prove any requirement is fatal to the cause of action. *Alonzo v. Safari Car Wash, Inc.*, 75 So.3d 509, 511 (La.App. 5 Cir. 9/27/11).

*A. Whether the Drain Cover Presented an Unreasonable Risk of Harm*

Wal-Mart asserts that Plaintiff cannot overcome the burden to prove that any "condition" which was unreasonably dangerous contributed to his fall. In determining whether a condition presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. *Bufkin v. Felipe's La., LLC*, 171 So.3d 851, 856 (La. 2014). In determining whether a condition is unreasonably dangerous, courts have adopted a risk-utility balancing test. This test encompasses four factors: (1) the utility of the thing; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of

its social utility, or whether it is dangerous by nature. *Pryor v. Iberia Parish School Bd.*, 60 So.3d 594, 596–97 (La. 2011).

Plaintiff does not dispute that the drain cover served a significant social utility purpose by diverting rainwater collected by gutter systems to be diverted from pedestrian walkways. *R. 23-3, 28*. As to the likelihood and magnitude of harm, federal and Louisiana state courts have generally held that a potentially dangerous condition does not present an unreasonable risk of harm where that condition is open and obvious to all. *E.g.*, *Taylor v. Wal–Mart Stores, Inc.*, 2006 WL 1476031, *2 (W.D.La. May 23, 2006) (citing *Pitre v. La. Tech. Univ.*, 673 So.2d 585) (La., 1996) ("A potentially dangerous condition that is open and should be obvious to all is not unreasonably dangerous."); *Jennings v. Ryan's Family Steak Houses, E., Inc.*, 2005 WL 2180487, *3 (W.D.La. Sept.9, 2005) (citing *Durman v. Billings*, 873 So.2d 872 (La.App. 2 Cir. 5/12/04) ("If the risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable."). Thus, the issue in this case is whether or not the drain cover constituted an unreasonable risk of harm to Plaintiff, or was the drain cover "open and obvious," and thus not unreasonably dangerous.

In the instant case, there is no dispute that the drain cover on which Plaintiff slipped was plainly visible. Furthermore, Plaintiff admitted seeing the drain cover "out of the corner of his eye." Plaintiff contends, however, that he didn't realize

something was wrong with the drain cover until he stepped on it and he felt his foot sloping down. Plaintiff testified that the height difference on one side of the drain cover was "maybe a quarter inch" which he agreed was a very subtle height difference. *R. 23, p. 80, l. 13–25*. Nonetheless, Plaintiff contends that the height difference "is of no matter here" because Wal-Mart has presented no evidence to show exactly what the height differential was. *R. 26, p. 9*. Wal-Mart, however, relies on Plaintiff's own photographs and video in asserting that the following Louisiana law holds that such a height variation as demonstrated by the evidence in this case is not unreasonably dangerous. *R. 23-3, 31*.

In *Leonard v. Sam's West, Inc.*, 2013 WL 121761, at *3 (M.D.La.2013), the evidence indicated that the depression on which the plaintiff fell was located in a parking space and was eight inches long. It had an average depth of five-eighths of an inch and its deepest point was seven-eighths of an inch. The court noted that the Louisiana Supreme Court has at least three times addressed whether variations in the surface of sidewalks or parking lots constitute an unreasonable risk of harm. *See e.g., Reed v. Wal-Mart*, 708 So.2d 362, 365 (La. 1998) (holding that a one-half inch depression was not unreasonably dangerous); *Boyle v. Bd. of Supervisors, La. State Univ.*, 685 So.2d 1080, 1082 (La. 1997) (depression of one inch to two inches did not present an unreasonable risk); *White v. City of Alexandria*, 43 So.2d 618, 620 (La.

1949) (holding that a variance in a sidewalk of one-half inch to two inches did not present an unreasonable risk of harm).

In *Reed*, the court explained that the law does not require paved surfaces to be smooth:

> It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm. The issue in this case is the proper standard of reviewing, and what is encompassed within, a finding that a defect presents an unreasonable risk of harm.

*Reed*, 708 So.2d at 363.

Here, as evidenced by Plaintiff's video and photographs, the metal drain cover was a gray, metal cover which ran across the width of (perpendicular to) the sidewalk. The cover contained an upraised diamond-like pattern which the parties refer to as "textured." A bright yellow line was painted along the outer edge of the cover, parallel with the edge of the curb. *R. 23-7*. While Plaintiff's photograph of one edge of the drain cover taken near ground level, demonstrates a slight rise which Plaintiff consistently testified was maybe a quarter of an inch—less than a half inch, neither the photographs nor the video reveal warping or remarkable sloping of the drain. Further, there is no indication of the upraised diamond-like pattern (texture) being

worn. The Court concludes, in accordance with the Louisiana Supreme Court's decisions in *White*, *Boyle* and *Reed,* that the one-quarter to less than one-half inch height difference in the drain cover was not unreasonably dangerous.

The absence of accident history also supports a finding that the condition was not unreasonably dangerous. Wal-Mart provided an affidavit of the Wal-Mart Personnel Manager and former Safety Team Leader, Crystal Craig dated May 10, 2017, who stated that she has been continuously employed at the Wal-Mart Store since it opened in 2000. *R. 23-10.* Craig avers that she is personally familiar with all prior accidents, including previous slip/trip and fall accidents reported by customers at the Wal-Mart Store as well as the records documenting same. *Id.* Craig states that since the Wal-Mart Store opened in September, 2000, Plaintiff's accident is the only slip/trip and fall accident to have occurred on any storm drain cover at the location where Derek Brown slipped. *Id.* As it is undisputed that the first accident did not occur during the drain cover's existence of seventeen years—the risk of injury was not great.

The Louisiana Supreme Court considered the gravity and risk of harm against the cost and feasibility of repair, social utility, and individual and societal rights and obligations. *Reed*, 708 So.2d at 363–64. The Supreme Court has recognized that, although the cost of repair of a particular issue such as in this case might be minimal,

the "cost to eliminate all such minor defects is staggering." *Reed*, 708 So.2d at 366. The Court further noted that the cost of "maintain[ing] such surfaces free from defects is likely impossible, and is certainly cost-prohibitive." *Id.; see also Boyle,* 685 So.2d at 1083–84.

Finally, it is undisputed, and the jurisprudence confirms that a covered drain in the sidewalk which diverts rain water from the sidewalk and pedestrians, such as the one at issue in this case, has social utility and does not create an unreasonable risk of harm. *See e.g. Baker v. State, Dept. of Health and Human Resources*, 921 So.2d 1209, 1214 (La.App. 3 Cir.,2006) (A 3/8 inch deviation between the sidewalk and drain cover did not pose an unreasonable risk of harm.).

Accordingly, considering the factors outlined by Louisiana law and applying the risk–utility balancing test and applicable substantive law, the Court finds that the one quarter inch to less than one half inch deviation in the sidewalk and the drain cover does not rise to the level of an unreasonably dangerous condition.

### *IV. Conclusion*

Based on the foregoing, Wal-Mart's Motion For Summary Judgment will be granted.

Thus done and signed this 24th day of July, 2017 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE